## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK DAPPOLLONE, Individually and on Behalf of All Others Similarly Situated, | Case No.: _____ |
| Plaintiff, | |
| v. | **CLASS ACTION** |
| BENEFICIAL BANCORP, INC., FRANK A. FARNESI, EDWARD G. BOEHNE, KAREN DOUGHERTY BUCHHOLZ, MICHAEL J. DONAHUE, DONALD F. GAYHARDT, JR., ELIZABETH H. GEMMILL, THOMAS J. LEWIS, and ROY D. YATES, | **COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934** |
| | **DEMAND FOR JURY TRIAL** |
| Defendants | |

Plaintiff Mark Dappollone ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## <u>NATURE OF THE ACTION</u>

1.      This is a class action brought by Plaintiff on behalf of himself and all other similarly situated public shareholders of Beneficial Bancorp, Inc. ("Beneficial" or the "Company") against Beneficial and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants," and, together with Beneficial, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the acquisition of Beneficial by WSFS Financial Corporation ("WSFS").

2.      On August 7, 2018, Beneficial and WSFS entered into an Agreement and Plan of Reorganization (the "Merger Agreement"), pursuant to which Beneficial will merge with and into WSFS, with WSFS continuing as the surviving corporation (the "Proposed Transaction").

3.      Pursuant to the terms of the Merger Agreement, each share of Beneficial common stock issued and outstanding will be converted into the right to receive (i) 0.3013 shares of WSFS common stock and (ii) $2.93 in cash (the "Merger Consideration").

4.      On September 27, 2018, in order to convince Beneficial's public common shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Beneficial; and (ii) the valuation analyses performed by Beneficial's financial advisor, Sandler O'Neill & Partners, L.P. ("Sandler"), in support of their fairness opinion.

6.      The special meeting of Beneficial's shareholders to vote on the Proposed Transaction is forthcoming, as the Proposed Transaction is expected to be completed in the first calendar quarter of 2019.  It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the shareholder vote so Beneficial shareholders can properly exercise their corporate suffrage rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Beneficial's

public common shareholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Beneficial's common stock trades on the Nasdaq stock exchange, which is headquartered in this District, which renders venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.     Plaintiff is, and has been at all times relevant hereto, a common shareholder of Beneficial.

12.     Defendant Beneficial is a Maryland corporation with its principal executive offices located at 1818 Market Street, Philadelphia, Pennsylvania 19103.  Beneficial is a is a community-based, diversified financial services company providing consumer and commercial banking services.  The Company's principal subsidiary, Beneficial Bank, has served individuals and businesses in the Delaware Valley area since 1853.  Beneficial common stock is traded on Nasdaq under the ticker symbol "BNCL."

13.     Defendant Frank A. Farnesi is, and has been at all relevant times, a director of Beneficial, and currently serves as the Company's Chairman of the Board.

14.     Defendant Edward G. Boehne is, and has been at all relevant times, a director of Beneficial.

15.     Defendant Karen Dougherty Buchholz is, and has been at all relevant times, a director of Beneficial.

16.     Defendant Michael Donohue is, and has been at all relevant times, a director of Beneficial.

17.     Defendant Donald F. Gayhardt, Jr. is, and has been at all relevant times, a director of Beneficial.

18.     Defendant Elizabeth H. Gemmill is, and has been at all relevant times, a director of Beneficial.

19.     Defendant Thomas J. Lewis is, and has been at all relevant times, a director of Beneficial.

20.     Defendant Roy D. Yates is, and has been at all relevant times, a director of Beneficial.

21.     The parties in paragraphs 13 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Beneficial, the "Defendants."

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Beneficial (the "Class").   Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23.     This action is properly maintainable as a class action because:

(a)     the Class is so numerous that joinder of all members is impracticable.  As of August 6, 2018, there were approximately 74.98 million shares of Beneficial common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.   The actual number of public shareholders of Beneficial will be ascertained through discovery;

(b)     there are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i.     whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy, in violation of Section 14(a) of the Exchange Act;

ii.     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

      iii.    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

(c)    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(d)    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)    the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

(f)    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

(g)    a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

<u>**SUBSTANTIVE ALLEGATIONS**</u>

## I.   Company Background and the Proposed Transaction

24.    Beneficial is a savings and loan holding company. As of December 31, 2016, the Company offered consumer and commercial banking services to individuals, businesses, and nonprofit organizations through 63 offices throughout the Philadelphia and Southern New Jersey

area.  Beneficial offers traditional financial services to consumers and businesses in its market areas.  The Company also offers insurance brokerage and investment advisory services through its subsidiaries, Beneficial Insurance Services, LLC and Beneficial Advisors, LLC, respectively.  As of December 31, 2016, the Company operated over 40 full-service banking offices in Bucks, Chester, Delaware, Montgomery, and Philadelphia Counties, Pennsylvania and 23 full-service banking offices in Burlington, Gloucester, and Camden Counties, New Jersey.  Beneficial also operates a lending office in Montgomery County, Pennsylvania.  In addition, Beneficial Insurance Services, LLC, operates an office in Montgomery County, Pennsylvania, and provides property, causality, life, health, and professional liability insurance to its customers.

25.    WSFS is a savings and loan holding company headquartered in Wilmington, Delaware and the parent to WSFS Bank, one of the ten oldest bank and trust companies in the United States continuously operating under the same name.  WSFS Bank is also the largest locally-managed bank and trust company headquartered in the Delaware Valley.

26.    On August 8, 2018, Beneficial and WSFS issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**WSFS Financial Corporation Announces Combination with Beneficial Bancorp, Inc.,
Creating the Largest, Premier, Locally-Headquartered Community Bank
for the Greater Delaware Valley**

*Concurrently executing a technology transformation to secure a competitive advantage and meet fast-changing Customer needs.*

WILMINGTON, Del. and PHILADELPHIA, Pa. — WSFS Financial Corporation (NASDAQ: WSFS) and Beneficial Bancorp, Inc. (NASDAQ: BNCL), jointly announced today the signing of a definitive agreement whereby WSFS Financial Corporation ("WSFS") will combine with Beneficial Bancorp, Inc. ("Beneficial"), in a transaction valued at approximately $1.5 billion. Concurrently with the acquisition, Beneficial Bank, the wholly

owned subsidiary of Beneficial, will merge into WSFS Bank, a wholly owned subsidiary of WSFS, creating the largest, premier, locally-headquartered community bank for the Greater Delaware Valley with the sixth-largest deposit market share. With approximately $13 billion in assets and growing, WSFS will be the only bank in the region with distinct market-share advantages, including local market knowledge and decision-making, a full-service product suite, the balance sheet to compete with larger regional and national banks, and most importantly, an ingrained culture of engaged Associates that bring to life WSFS' mission of *We Stand For Service* in our daily delivery of stellar Customer experiences.

WSFS Bank and Beneficial Bank share similar histories, missions, heritages and footprints. WSFS Bank was founded as Wilmington Savings Fund Society in Wilmington, Del. in 1832, for working citizens to encourage thrift and to safeguard their savings. Beneficial was founded in 1853 in Philadelphia, Pa., as Beneficial Savings Fund Society to provide a safe and secure place for immigrants to deposit their savings. Both banks offer retail, commercial and mortgage products and each provide specialized solutions that will round out the combined bank's full service product offerings. WSFS operates from 77 offices, including 60 banking offices, predominantly in Delaware and southeastern Pennsylvania. Beneficial operates from 72 offices, including 61 banking offices, that are predominantly in the City of Philadelphia and neighboring communities in southeastern Pennsylvania and southern New Jersey.

"This is an historic combination," said WSFS' Chairman, President and CEO Mark A. Turner, who will become WSFS' Executive Chairman on January 1, 2019. "As a native Philadelphian and a lifelong resident of the Delaware Valley, I believe this combination provides a compelling opportunity to serve our combined markets as it fills a long-standing gap between big banks and smaller community banks in this market. Together, we are poised and positioned to serve Customers, to capture good market share, to expand the reach of our proven successful business model, and to deliver sustainable high performance for years to come."

Gerard P. Cuddy, President and CEO of Beneficial said, "We strongly believe there is value in partnering with WSFS and combining the strengths of our institutions. This is a sound decision for Beneficial, our stockholders, our employees and the communities we serve. We are combining with WSFS because it is an established institution with deep roots in the Delaware Valley,

shares our values, and has the utmost respect for Beneficial's legacy."

"We are excited to be joining WSFS," added Frank A. Farnesi, Beneficial's Chairman. "It's a superior financial services company that has consistently delivered outstanding value to its stockholders. The combination of these two banking franchises will create a financial powerhouse uniquely dedicated to the customers and communities of the Delaware Valley."

The combination is WSFS' eighth acquisition since 2010, including traditional banks and other fee-based businesses in southeastern Pennsylvania and Delaware. WSFS' proven track record of successful integrations, combined with its strong organic growth and purposeful expansion into the greater Delaware Valley, has resulted in the creation of new jobs and significant community and economic investments.

WSFS anticipates consolidating approximately 25% of the combined physical banking offices over the next 12 to 24 months due to geographic overlap, changing Customer needs and optimization opportunities within the network. WSFS plans to reinvest an incremental $32 million, or about 50% of the estimated cost savings from the network optimization, into a five-year transformational investment in technology and delivery systems. The delivery transformation will produce a top-tier physical and digital servicing platform that will significantly enhance customer experiences across all business lines.

"This partnership and our delivery transformation aligns with our Strategic Plan," said longtime Delaware Valley banker Rodger Levenson, WSFS' Executive Vice President and Chief Operating Officer who will become President and CEO of WSFS on January 1, 2019. "Our combination with Beneficial creates the ideal opportunity to transform WSFS' Customer delivery and back office systems that will secure our competitive edge in a fast-changing financial services industry. This combination and the complementary technological investment aligns with WSFS' proven strategy of accelerating investment spending over the short-term to deliver superior long-term returns for WSFS Owners. Our combined organization, with over 350 years of banking history, better positions us to continue to serve and outperform for all of our constituents, and vaults us past the $10 billion Dodd-Frank threshold in an economical way."

Under the terms of the agreement, which has been unanimously

approved by the boards of directors of both companies, stockholders of Beneficial will receive 0.3013 shares of WSFS common stock and $2.93 in cash for each share of Beneficial common stock. Based on WSFS' closing price as of August 7, 2018, the per share value equates to $19.61 for Beneficial stockholders.

WSFS expects to incur pre-tax merger and restructuring costs related to both the merger and transformation investments of approximately $146 million and to achieve annual synergies of $68 million per year, once fully phased in by 2021. Approximately $56 million of such synergies, or 37% of Beneficial's year-to-date 2018 annualized non-interest expense, are anticipated to be derived from non-branch operations and personnel costs, with the balance stemming from both organizations as a part of the delivery transformation initiative. The acquisition is expected to be accretive to WSFS' earnings per share in the first full year of combined operations, excluding the one-time merger and restructuring costs noted above, and 8% accretive once all synergies are achieved in 2021, generating an internal rate of return (IRR) of approximately 19%. The transaction is expected to close during the first quarter of 2019.

Upon completion of the acquisition, Gerard P. Cuddy, President and CEO of Beneficial, will become Vice Chairman of WSFS Bank and will join the Boards of Directors of WSFS Financial and WSFS Bank along with two mutually agreed upon current directors of Beneficial's Board.

Boenning & Scattergood, Inc. acted as financial advisor to WSFS and its legal counsel was Covington & Burling LLP. Sandler O'Neill + Partners, L.P acted as financial advisor to Beneficial and its legal counsel was Kilpatrick Townsend & Stockton LLP.

WSFS' management team and Beneficial's CEO Gerry Cuddy will host a conference call at 10:00 AM ET on August 8, 2018, to discuss the strategic combination. Interested parties may listen to this call by dialing 1-877-312-5857. Presentation slides for the conference call are available on the Company's investor relations page at http://investors.wsfsbank.com/events-presentations. A rebroadcast of the conference call will be available one hour after the completion of the conference call, until Saturday, August 18, 2018, by calling 1-855-859-2056 and using Conference ID #9450849.[1]

---

[1]   Beneficial Bancorp, Inc., Current Report (Form 8-K), at Exhibit 99.1 (Joint Press Release, dated August 8, 2018) (August 8, 2018).

27.     The Merger Consideration the Company's shareholders stands to receive if the Proposed Transaction is consummated is unfair and inadequate because, among other things, the intrinsic value of the Beneficial is materially in excess of the amount offered given the Company's prospects for future growth and earnings.

28.     On February 1, 2018, the Company announced its Fourth Quarter and 2017 Year Ended fiscal results.  Notably, net interest income increased $5.1 million and $19.0 million, or **12.7% and 12.6%**, respectively, for the quarter and year ended December 31, 2017.[2]  As a result, the Company declared **its seventh consecutive quarterly cash dividend** of $0.06 per share, in addition to a special dividend of $0.25 per share given Beneficial's high capital levels and expected benefit to future earnings.

29.     On April 20, 2018, the Company announced its First Quarter 2018 Financial Results and continued success.  Notably, net interest income increased $2.4 million, or 6.0%, for the quarter compared to the same period in the prior year.  In addition, the Company declared another cash dividend.[3]  Gerard Cuddy ("Cuddy"), Beneficial's President and CEO, commented on the announcement and noted that "[Beneficial's ] financial results continue to improve, driven by a rise in interest rates, continued favorable asset quality and management of our expense base." *Id.*

30.     Most recently, on July 20, 2018, the Company announced its Second Quarter 2018 Financial Results, which illustrated further growth.  Indeed, the Company announced that net

---

[2]     Beneficial Bancorp, Inc. Announces Quarter and Year End Results and Cash Dividend to Shareholders, Seeking Alpha (Feb. 1, 2018), *available at* https://seekingalpha.com/pr/17062552-beneficial-bancorp-inc-announces-quarter-year-end-results-cash-dividend-shareholders.

[3]     Beneficial Bancorp, Inc. Announces First Quarter Results and Cash Dividend to Shareholders, Seeking Alpha (April 20, 2018), *available at* https://seekingalpha.com/pr/17135956-beneficial-bancorp-inc-announces-first-quarter-results-cash-dividend-shareholders.

interest income increased $3.4 million, or 8.1%, and $5.8 million, or 7.0%, for the three and six

months ended June 30, 2018 compared to the same periods in the prior year.[4]

     31.    Cuddy commented on the Company's continued success, stating:

> Our financial results continue to improve, driven by a rise in interest
> rates, continued favorable asset quality and management of our
> expense base. We are seeing some growth in our commercial real
> estate and residential lending businesses in line with the overall
> growth rate of the economy. We are working diligently to build out
> the Neumann Finance team and infrastructure and expect to start
> booking leases late in the third quarter 2018 which we expect to
> positively impact future loan and revenue growth.

*Id.*

     32.    Furthermore, the Company's consistent positive performance was reflected in the

increase in its stock price, as illustrated below:



     33.    Additionally, Boenning & Scattergood, Inc. ("Boenning"), WSFS's financial

---

[4]    *Beneficial Bancorp, Inc. Announces Second Quarter Results and Cash Dividend to
Shareholders*, Seeking Alpha (July 20, 2018), *available at* https://seekingalpha.com/pr/17221656-
beneficial-bancorp-inc-announces-second-quarter-results-cash-dividend-shareholders.

advisor, conducted a discounted cash flow ("DCF") analysis[5], which resulted in a range of implied values per share of Beneficial common stock of **$19.67 per share to $28.92 per share**. *See* Proxy at 107. As a result, the implied value of the Merger Consideration as of August 7, 2018—$19.61— does not even fall within the analysis' range of reasonableness.

34. In combination with the Company's strong financial results and growth potential, it appears that the Merger Consideration is not fair compensation for Beneficial shareholders. It is therefore imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and make an informed decision concerning whether to vote in favor of the Proposed Transaction.

## II. The Materially Incomplete and Misleading Proxy

35. On September 27, 2018, the Defendants filed a materially incomplete and misleading Proxy with the SEC and disseminated it to Beneficial's shareholders. The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed

---

[5] Several courts have recognized that the DCF analysis "is the approach that merits the greatest confidence within the financial community." *In re Appraisal of Dell Inc*., No. 9322-VCL, 2016 Del. Ch. LEXIS 81, at *148 (Del. Ch. May 31, 2016); *Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*, No. 5002-CC, 2009 Del. Ch. LEXIS 210, at *1-2 (Del. Ch. Nov. 18, 2009) ("[T]he discounted cash flow analysis [is] arguably the most important valuation metric . . . ."); *Cede & Co. v. Technicolor, Inc.*, C.A. No. 7129, 1990 Del. Ch. LEXIS 259, at *23 (Del. Ch. Oct. 19, 1990) (claiming the DCF analysis "is in theory the single best technique to estimate the value of an economic asset.").

Transaction.

36.     First, the Proxy fails to provide sufficient information regarding financial projections for the Company.

37.     Specifically, the Proxy discloses that Boenning performed a discounted cash flow analysis of Beneficial and derived a range of implied values per share of Beneficial stock by using "the present value of the estimated excess **cash flows that Beneficial could generate over the five-year period from 2017 to 2021**." Proxy at 107 (emphasis added). However, the *Certain Prospective Financial Information* section of the Proxy fails to disclose any cash flow projections for Beneficial.

38.     Indeed, investors are concerned, perhaps above all else, with the cash flows of the companies in which they invest. Under sound corporate finance theory, the market value of a company should be premised on the expected cash flows of the corporation. Accordingly, the question that the Company's shareholders need to assess in determining whether to vote in favor of the Proposed Transaction is clear – is the Merger Consideration fair compensation given Beneficial's projected cash flows? Without Beneficial's cash flow projections for the years 2017 to 2021, the Company's shareholders will not be able to answer this question and assess the fairness of the Merger Consideration.

39.     By electing to disclose some of Beneficial's projections, Defendants' obligated themselves to speak the whole truth regarding Beneficial's projections by providing complete and accurate projections because if a proxy discloses financial projections and valuation information, such **projections must be complete and accurate**, rather than cherry-picking favorable financial metrics to disclose. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a

company may choose silence or speech elaborated by the factual basis as then known—**but it may not choose half-truths.**

40.     The Proxy describes Sandler's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Sandler's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Beneficial's shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Sandler's fairness opinion in determining whether to vote their shares in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Beneficial's common shareholders.

41.     With respect to Sandler's *Beneficial and WSFS Net Present Value Analyses*, the Proxy fails to disclose: (i) the terminal value of a share of Beneficial common stock at December 31, 2022; (ii) the inputs and assumptions underlying the selection of Beneficial's price to 2022 earnings per share multiples ranging from 14.0x to 19.0x; (iii) the inputs and assumptions underlying the selection of Beneficial's multiples of December 31, 2022 tangible book value per share ranging from 130% to 193%; (iv) the terminal value of a share of WSFS common stock at December 31, 2022; (v) the inputs and assumptions underlying the selection of WSFS's price to 2022 earnings per share multiples ranging from 13.0x to 18.0x; and (vi) the inputs and assumptions underlying the selection of WSFS's multiples of December 31, 2022 tangible book value per share ranging from 200% to 300%.  *See* Proxy at 89-90.

42.     These key inputs are material to Beneficial common shareholders, and their omission renders the summary of Sandler's *Beneficial and WSFS Net Present Value Analyses* materially incomplete and misleading.  As a highly-respected professor explained in one of the

most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, "there is [] an element of subjectivity present in the choice and application of these [valuation] methods" and that the banker's key choices can have a substantial "effect the outcome of a valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1573-74 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id.*

43.     Furthermore, given the inherent complexity of a net present value analysis, small changes in the integral inputs and assumptions underlying each analysis can "drastically affect the end results of your calculation."[6]  Consequently, without the above-mentioned information, Beneficial shareholders cannot evaluate for themselves the reliability of Sandler's *Beneficial and WSFS Net Present Value Analyses*, make a meaningful determination of whether the imputed range of values per share reflect the true value of the Company and WSFS or was the result of Sandler's unreasonable judgment, and make an informed decision regarding whether to vote in favor of the Proposed Transaction, thereby rendering the summary of the analysis materially incomplete and misleading.

44.     With respect to Sandler's *Beneficial and WSFS Peer Group Analyses*, the Proxy fails to disclose the individual metrics Sandler calculated for each company utilized.  The omission of these values renders the summary of the analysis materially incomplete and misleading.  A fair summary of the *Beneficial and WSFS Peer Group Analyses* requires the disclosure of the individual values for each company in the Beneficial and WSFS Peer Groups; merely providing the low, mean, median, and high values that a banker applied is insufficient, as shareholders are

---

[6]     Amy Gallo, *A Refresher on Net Present Value*, HARVARD BUSINESS REVIEW (Nov. 19, 2014), *available at* https://hbr.org/2014/11/a-refresher-on-net-present-value.

unable to assess whether the banker utilized the appropriate companies, or, instead, selected certain companies that yielded unreasonably low values in order to make the Proposed Transaction appear more favorable.  *See* Proxy at 85-87.  Accordingly, Sandler's *Beneficial and WSFS Peer Group Analyses* is materially incomplete and misleading, and the individual values for each company observed must be disclosed so Beneficial shareholders can determine whether the range of multiples set forth in the Proxy actually reflect the true value of the Company and, ultimately, whether the Proposed Transaction is in their best interest.

45.  Similarly, with respect to Sandler's *Analysis of Selected Precedent Transactions*, the Proxy fails to disclose the individual values Sandler calculated for each transaction utilized. *See* Proxy at 87-89.  For the same reasons mentioned above, the failure to disclose the individual values calculated for each of the transactions that were considered renders the summary of the analysis materially incomplete and misleading.

46.  With respect to Sandler's *Pro Forma Merger Analysis*, the summary of the analysis states:

> The analysis indicated that the merger could be approximately neutral to WSFS's estimated earnings per share (excluding one-time transaction costs and expenses) in the year ending December 31, 2019, **accretive** to WSFS's estimated earnings per share (excluding one-time transaction costs and expenses) in the years ending December 31, 2020 through December 31, 2022, **dilutive** to WSFS's estimated tangible book value per share at close and at December 31, 2019, December 31, 2020, and December 31, 2021 and **accretive** to WSFS's estimated tangible book value per share at December 31, 2022.

Proxy at 91 (emphasis added).  However, the Proxy entirely fails to quantify how "accretive" or "dilutive" the Proposed Transaction could be during the years ending December 31, 2020 through December 31, 2022.  Unsurprisingly, Beneficial shareholders are particularly concerned with the financial impact the Proposed Transaction will have on the combined business because the Merger

Consideration is comprised of common stock in the combined business.  As a result, the failure to quantify how *accretive* the Proposed Transaction will be to WSFS's estimated earnings per share in the years ending December 31, 2019 through December 31, 2022, how *dilutive* the Proposed Transaction will be to WSFS's estimated tangible book value per share at closing, and how *accretive* the Proposed Transaction will be to City's estimated tangible book value per share at December 31, 2022 renders the summary of the analysis materially incomplete and misleading.

47.    In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## <u>COUNT I</u>

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)**

48.    Plaintiff incorporate each and every allegation set forth above as if fully set forth herein.

49.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

50.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

51.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

52.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for Beneficial; and (ii) the valuation analyses performed by Beneficial's financial advisor, Sandler, in support of their fairness opinion.

53.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

54.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the

Proposed Transaction; indeed, the Proxy states that Sandler reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Sandler, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.   Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.   The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Sandler's analyses in connection with their receipt of the fairness opinions, question Sandler as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

55.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.   The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.   The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.   Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement.

56.    Beneficial is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

57.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the

Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

58.     Plaintiff incorporate each and every allegation set forth above as if fully set forth herein.

59.     The Individual Defendants acted as controlling persons of Beneficial within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Beneficial, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

62. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

63. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

65. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.      Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.      Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


DATED: October 15, 2018

**MONTEVERDE & ASSOCIATES PC**

/s/ Juan E. Monteverde
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*